IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ALEXIS D. KYLES,                          )
                                          )
            Plaintiff,                    )
                                          )
v.                                        )    CIVIL ACTION NO. 16-0495-KD-MU
                                          )
NANCY A. BERRYHILL,                       )
Acting Commissioner of Social             )
Security,                                 )
                                          )
            Defendant.                    )


## MEMORANDUM OPINION AND ORDER

Plaintiff Alexis D. Kyles brings this action, pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social

Security ("the Commissioner") denying her claim for Supplemental Security Income

("SSI"), based on disability. (Doc. 1). The parties have consented to the exercise of

jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings

in this Court. (Doc. 15 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.

R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge

conduct any and all proceedings in this case, . . . order the entry of a final judgment,

and conduct all post-judgment proceedings.")). Upon consideration of the administrative

record, Kyles's brief, the Commissioner's brief, and the arguments of counsel at the

April 26, 2017 hearing before this Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded.[1]

## I.  PROCEDURAL HISTORY

Kyles applied for SSI, based on disability, under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383d, on June 12, 2013. (Tr. 22). Her application was denied at the initial level of administrative review on August 28, 2013. (Tr. 82-86). On October 3, 2013, Kyles requested a hearing by an Administrative Law Judge (ALJ). (Tr. 87). After hearings were held on October 10, 2014, and April 6, 2015, the ALJ issued an unfavorable decision finding that Kyles was not under a disability from the date the application was filed through the date of the decision, April 24, 2015. (Tr. 22-31).  Kyles appealed the ALJ's decision to the Appeals Council, which denied her request for review of the ALJ's decision on August 12, 2016. (Tr. 1-3). After exhausting her administrative remedies, Kyles sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. 1). The Commissioner filed an answer and the social security transcript on December 15, 2016. (Docs. 7, 8). After both parties filed briefs setting forth their respective positions, the Court conducted a hearing on this matter on April 26, 2017. (Docs. 9, 10). The case is now ripe for decision.

## II.  CLAIMS ON APPEAL

Kyles alleges that the ALJ's decision to deny her benefits is in error for the following reasons:

---

[1] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 15 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

1. The ALJ failed to consider whether Kyles's impairment or combination of impairments is of a severity to meet or medically equal the criteria of Listing 12.05C; and

2. The ALJ failed to give adequate weight to the opinions of consulting psychologists Dr. Tocci and Dr. Starkey.

(Doc. 9 at p. 2).

## III. BACKGROUND FACTS

Kyles was born on May 17, 1995, and was 18 years old at the time she filed her claim for benefits. (Tr. 39, 22). Kyles initially alleged disability due to ADHD and anxiety. (Tr. 70, 211, 245). Kyles graduated from high school and passed a portion of the Alabama High School Graduation Exam. (Tr. 39). At the time of the initial hearing on October 10, 2014, she had recently started working at Wal-Mart . (Tr. 39). She started working as a cashier, but because of attention and focus issues, she was moved to housekeeping and maintenance. (Tr. 40). On April 6, 2015, the ALJ conducted a supplemental hearing to determine whether Kyles disability equaled a 5.08 listing due to potential anorexia. (Tr. 52-53). At that time, Kyles was still working at Wal-Mart approximately 32 hours per week. (Tr. 54). After conducting these two hearings, the ALJ made a determination that Kyles was not entitled to benefits. (Tr. 31).

## IV. ALJ'S DECISION

After considering all of the evidence, the ALJ made the following relevant findings in his April 24, 2015, decision:

> **2. The claimant has the following severe impairments: borderline intellectual functioning (BIF); learning disorder, not otherwise specified; and attention-deficit/hyperactivity disorder (ADHD) (20 CFR 416.920(c)).**

These impairments are based on opinions from acceptable medical sources, and supported by objective test results or accepted clinical diagnostic practices. I find that these impairments, either individually or in combination, impose more than a minimal effect on the claimant's ability to perform basic work activities. Consequently, they are severe impairments for the purpose of disability review.

The record does not support the existence of severe physical impairments (food allergy, acne, anorexia, and low weight), which is consistent with the assessments provided by the State agency consultants (Exhibits 1A) and the ME who testified that the claimant's impairments did not meet or equal a Listing as testimony regarding her ongoing work support inferences that the impairments are not physically severe. In addition, 20 CFR 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p define an impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. I have accorded significant weight to the State agency assessment as well as the ME, as the evidence received at the hearing level confirms their findings. The claimant's source of work-related impairment derives from her mental impairments, as discussed herein.

**3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 416.920(d), 416.925 and 416.926).**

I find that these impairments, singly or in combination, based upon a review of the medical evidence, do not meet Listing level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment.

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 12.02. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has mild restriction. The claimant testified that she was able to perform household chores. The record further

shows the claimant has no problems with tending to all personal needs as well as preparing simple meals (Exhibits 4E and 3F-4F).

In social functioning, the claimant has moderate difficulties. The claimant testified that she attends church. In addition, the record shows she participates in hobbies and interests two to three times a week; spends time with others once or twice a week; and gets along well with authority figures (Exhibits 4E and 3F-4F).

With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant testified she was able to manage a bank account; drive a motor vehicle; work; and attend community college. The evidence also reveals the claimant is able to shop in stores; pay bills; count change; use a checkbook/money orders; and, she does not need reminders to go places. However, the record reflects she requires reminders to brush her teeth and take her medication; and, she has difficulty completing tasks, concentrating, and understanding and following instructions (Exhibits 4E and 3F-4F).

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.

\* \* \*

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation each of extended duration, the "paragraph B" criteria are not satisfied.

I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria because the claimant does not have a medically documented history of a chronic organic mental disorder or chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and repeated episodes of decompensation, each of extended duration; or a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or a current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement, as required by Sections 12.02C.

\* \* \*

**4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional**

**limitations. She is able to perform simple, routine tasks involving no more than very simple, short instructions and simple work-related decisions with minimal and gradual workplace changes. She can perform work involving no interaction with the public, non-transactional interaction with co-workers and non-transactional interaction with supervisors. The claimant cannot perform math calculations. She is able to sustain attention for two-hour periods with customary breaks.**

In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

* * *

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning.

* * *

The totality of the medical evidence does not support any limitations beyond the scope of the residual functional capacity noted herein. Because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 416.929(c) describes the kinds of evidence, including the factors below, that I must consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements:

1. The claimant's daily activities;
2. The location, duration, frequency, and intensity of the claimant's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and,

7. Any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms (SSR 96-7p).

The claimant has testified to a limited range of daily activities and has generally testified as to the location, duration, frequency and intensity of her symptoms, as well as to efforts taken to alleviate those symptoms and the factors that precipitate and aggravate those symptoms. Usually, these factors would weigh in favor of a finding of disability. However, I find that other factors outweigh these factors, leading me to conclude the claimant's testimony cannot be taken as entirely persuasive. Chief among these is that, the record reflects the treatment the claimant has received has been largely minimal and conservative in nature. Despite claiming limitations due to her severe mental impairments, the claimant testified, and the evidence reflects, she currently works at Wal-Mart; she is able to perform all personal needs and household chores, independently; as well as drive a motor vehicle. Moreover, she has only seen her primary provider for medications; and, she has not received any specialized counseling or cognitive behavioral treatment. Further, although the claimant testified to cognitive limitations, education records show she was able to obtain a high school diploma and attend community college courses thereafter (Exhibits 4E and 3F-4F). At this point, the claimant has described daily activities that are inconsistent with her allegations of disabling symptoms and limitations.

After careful consideration of the evidence, I finds [sic] that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

In terms of the claimant's alleged limitations and/or difficulty caused by her severe mental impairments, the objective evidence of record shows she is able to perform unskilled work as defined in the residual functional capacity herein. Specifically, while education records show the claimant was in general education classes with an individualized education plan (IEP), she was observed to be a hardworking student. She completed all assignments with use of some special services; and, her only weaknesses were in math and reading that interfered with her achievement in the general education classroom (that was also reflected on AIMSWEB testing). Otherwise, the claimant passed the science, English, and history portions of the AHSGE; and, she had no noted behavior concerns that impeded her learning or the learning of others. In addition, she had no identified communication needs (Exhibits 9E and IF).

In August 2013, the claimant underwent a consultative psychological evaluation performed by Nina E. Tocci, Ph.D., MSCP (Exhibit 3F). The claimant was observed to have good eye contact; a cooperative attitude; normal speech; appropriate mood and affect; and no noted symptoms of

attention-deficit. She was oriented; her attention and concentration were fair; her fund of information and comprehension was poor; her thought content was appropriate; and, she demonstrated little insight into her behavior. Additionally, her intelligence appeared to be functioning with in the mentally impaired range of intellectual ability. The claimant was diagnosed with learning disability, NOS and assigned a GAF score of 55, signifying only moderate symptoms or difficulty in social, occupational, or school functioning. Dr. Tocci opined the claimant's prognosis was poor.

Similarly, in December 2013, Kenneth R. Starkey, Psy.D., performed a consultative psychological evaluation of the claimant (Exhibit 4F). Upon evaluation, the claimant's appearance was good; she was alert and oriented; and, she was able to focus and sustain attention but with mild distraction. Her speech was clear and coherent; her thinking was rational with evidence of mild deficits for reasoning and judgment; loosening of associations, tangential thinking, or racing thoughts were not present; and, there was no evidence of delusional thoughts or paranoia. WAIS-IV testing showed the claimant achieved a Verbal Comprehension Index of 78; Perceptual Reasoning Index of 73; Working Memory Index of 74; Processing Speed of 74; and Full-Scale IQ score of 70, which placed the claimant at the lower end of the Borderline range of intellectual functioning. Dr. Starkey diagnosed the claimant with BIF and assigned her a GAF score of 65, indicative of only mild symptoms or difficulty in social, occupational, or school functioning. He opined the claimant could adequately understand, remember, and carry out simple, concrete instructions; and, her ability to complete basic age-related activities and work independently appeared adequate. Moreover, close supervision would be necessary to assure adequate performance of complex tasks; her ability to work with teachers, supervisors, and peers was adequate; but, her ability to work with the general public would be marginal. The claimant would also require assistance for managing benefits.

Furthermore, Dr. Starkey also provided a medical source statement based on his evaluation. He opined the claimant had no limitations understanding, remembering, or carrying out simple instructions; or making judgments on simple work-related decisions. She had only mild limitations understanding, remembering, or carrying out complex instructions; or making judgments on complex work-related decisions. Additionally, the claimant had no difficulty interacting appropriately with supervisors and co-workers; and only mild difficulty interacting appropriately with the public and responding appropriately to usual work situations and changes in routing [sic] work settings (Exhibit 4F).

In general, for all the treatment records in the claimant's file, the treatment she has received has been relatively minimal, but helpful. As previously mentioned, the objective sings [sic] and findings have been nominal in any of the examinations for the claimant's alleged impairments. The evidence reflects her symptoms were controlled with medication (Focalin). Additionally, the evidence

does not reflect the claimant was hospitalized for an extended duration, nor does she have marked limitations and/or difficulties directly related to her mental impairments to the extent they significantly affect her activities of daily living, social functioning, or concentration, persistence, or pace. Overall, the record simply does not support the allegations of disabling symptoms as proclaimed by the claimant.

As for the opinion evidence, as previously indicated, the ME testimony and State agency mental assessments are accorded significant weight as they are consistent with the overall evidence of record (Exhibit 1A).

The opinion of consultative examiner, Nina E. Tocci, Ph.D., MSCP, is accorded no weight, as it is inconsistent with the overall evidence of record as well as the claimant's testimony that reflects she is currently able to perform ongoing work activities (Exhibit 3F).

Although consultative examiner, Kenneth R. Starkey, Psy.D., performed thorough standardized testing of the claimant, his overall opinions are not consistent with the evaluation or the totality of the evidence of record. Therefore, his opinions merit no substantial weight (Exhibit 4F).

In sum, I conclude that the claimant's impairments are not as severe or limiting as alleged. Thus, they would not preclude her from performing work within the parameters of the Residual Functional Capacity noted above on a regular and sustained basis.

\* \* \*

Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

(Tr. 24-31).

## V. DISCUSSION

A claimant is entitled to an award of SSI benefits if the claimant is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or last for a continuous period of not less than 12 months. *See* 20 C.F.R. § 416.905(a). The impairment must be

severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation in determining whether the claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

The reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a

whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

As set forth above, Kyles has asserted two reasons why the Commissioner's decision to deny her benefits is in error. Based on the finding below that the first asserted error requires remand to the Commissioner, the Court pretermits its discussion of the remaining issue.

Kyles asserts that the ALJ's failure to specifically consider whether her impairment or combination of impairments is of a severity to meet or medically equal the criteria of Listing 12.05C was in error because it is not supported by substantial evidence. The ALJ found that Kyles had the following severe impairments: borderline intellectual functioning, learning disorder NOS, and ADHD. (Tr. 24). The ALJ stated in his decision that these impairments did not equal the severity necessary to meet the criteria of any listed impairment. (Tr. 25). He then specifically evaluated Kyles under Listing 12.02. He did not evaluate Kyles under Listing 12.05. The Commissioner argues that Kyles failed to carry her burden of establishing disability under 12.05 and that substantial evidence supported the ALJ's finding that Kyles was not disabled under the Listings.

On November 14, 2013, Kyles's attorney sent a letter, which is part of the record, to the Mobile office of Disability, Adjudication & Review stating that during her consultative examination on August 14, 2013 with Dr. Tocci she "was found to be functioning within the mentally impaired range of intellectual ability." (Tr. 269). In the letter, her attorney requested a consultative examination be scheduled for an IQ test and stated that they believed "an IQ test may show that [Kyles] reaches a 12.05 listing." (*Id*.). Thereafter, Kyles was sent to Dr. Starkey for IQ testing. (Tr. 336). She scored a valid full-scale IQ of 70 on the WAIS-IV that was administered by Dr. Starkey in December of 2013. (Tr. 338). Kyles asserts that this score was supported by consultative examinations and reports of Dr. Starkey and Dr. Tocci. (Tr. 328-30, 333-40). At the hearing before the ALJ, her attorney stated: "[Dr. Starkey] indicated that Ms. Kyles has a full-scale IQ of 70. He also notes that she would have a marginal ability to deal with the general public and pressures common to work settings, most likely as a result of her ADHD and verbal or full-scale IQ score. Based on that Your Honor, I think that she would be unable to sustain gainful employment." Although her counsel did not specifically mention 12.05 or the terms "mental retardation" or "intellectual disability" at either hearing, Kyles asserts that the issue was clearly raised in the November 14, 2013 letter and by her attorney's statement at the hearing.

In noted above, evidence was presented that Kyles, who is under the age of 22, has a full scale IQ of 70 and has a diagnoses of ADHD, which the ALJ found to be a severe impairment; however, the ALJ did not mention Listing 12.05 at the hearing nor did he specifically mention, address, or analyze Listing 12.05 in his Decision. (Tr. 22-

31). The question presented is whether the ALJ erred by failing to address or analyze whether Kyles can meet the requirements of Listing 12.05C.

The Listings describe certain medical findings and other criteria that are considered so extreme as to be presumptively disabling. *See* 20 C.F.R §§ 404.1525, 416.925. To establish disability under a Listing, a claimant must have a diagnosis included in the Listing and must provide medical reports documenting that her condition satisfies the specific criteria of the listed impairment. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002); 20 C.F.R. §§ 404.1525(a-d), 416.925(a-d). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."

https://1.next.westlaw.com/Link/Document/FullText?findType=Y&serNum=1990037731 &pubNum=0000708&originatingDoc=Ia423ade0ef2c11e692ccd0392c3f85a3&refType=RP &fi=co_pp_sp_708_891&originationContext=document&transitionType=DocumentItem&co ntextData=%28sc.Search%29 - co_pp_sp_708_891*Sullivan v. Zebley*, 493 U.S. 521, 530 (11th Cir. 1990).

To "meet" Listing 12.05, the claimant must satisfy the diagnostic description in the introductory paragraph and one of four sets of diagnostic criteria found in paragraphs A, B, C, or D. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A). Listing 12.05's introductory paragraph requires the claimant to have: (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive behavior; and (3) an onset of impairment before age 22. *Id*. at § 12.05.  Although adaptive functioning is not defined in the regulations, the Eleventh Circuit has favorably cited the description of adaptive

functioning in the Social Security Administration's Program Operations Manual System ("POMS") as "'the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age,'" as well as the statement in the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders that adaptive functioning means "'how well a person meets standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background. Adaptive functioning involves adaptive reasoning in three domains: conceptual, social, and practical.'" *Schrader v. Acting Comm'r of the Soc. Sec. Admin.,* 632 F. App'x 572, 576 & n. 3-4 (11th Cir. 2015) (quoting Soc. Sec. Admin., Program Operations Manual System, DI 24515.056(D)(2) (2012) and DSM-V 37 (5th ed. 2013)).

If the claimant satisfies the three requirements in the introductory paragraph, the claimant must then satisfy one of the four criteria listed in 12.05A through 12.05D. The Listing relevant here is 12.05C. Under Listing 12.05C, the claimant must show both a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*. at § 12.05(C). Paragraph C requires an IQ score within a certain range that is valid. The Social Security Administration has noted that standardized intelligence tests can assist in verifying the presence of intellectual disability, but form only part of the overall assessment and should be considered in conjunction with developmental history and functional limitations. *Id*. at § 12.05(D)(6)(a). There is, however, "a rebuttable presumption that a claimant manifested deficits in adaptive functioning before the age of 22 if the claimant established a valid IQ score between 60–70." *Grant v.*

*Astrue*, 255 F. App'x 374, 375 (11th Cir. 2007) (citing *Hodges v. Barnhart*, 276 F.3d 1265, 1266, 1268-69 (11th Cir. 2001)). The Court notes that an ALJ may find, for purposes of Listing 12.05, that the results of an IQ test are not valid, and therefore do not raise the presumption, where the test results are inconsistent with the medical record or the claimant's daily activities and behavior. *Popp v. Heckler*, 779 F.2d 1497, 1499–1500 (11th Cir. 1986); *see also Nichols v. Comm'r, Soc. Sec. Admin.,* No. 16-11334, 2017 WL 526038, *3-4 (11th Cir. Feb. 8, 2017) (holding that the ALJ did not err in finding claimant's IQ score of 59 invalid where her range of activities and accomplishments, including reading and understanding English, having a driver's license, completing high school with a certificate, having a history of some unskilled work, raising two children, and handling money, were inconsistent with the IQ results).

Kyles relies on her full scale IQ score of 70 to support her claim that she was disabled under 12.05C. As discussed above, "[a] *valid* IQ score of 60 to 70 satisfies the first prong of paragraph C and creates a rebuttable presumption that the claimant satisfies the diagnostic criteria for intellectual disability." *Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 911 (11th Cir. 2015). "Presumptive disability pursuant to Listing 12.05C is rebuttable, however, and the Commissioner is charged with determining whether there is sufficient evidence to rebut the presumption." *Tubbs v. Berryhill,* Civ. A. No. 15-00597-B, 2017 WL 1135234, at * 4 (S.D. Ala. Mar. 27, 2017).

The Eleventh Circuit has held that an ALJ is not required to explicitly discuss a listing if it can be implied from the ALJ's decision that the claimant did not meet the listing in question and that finding is supported by substantial evidence. *See James v. Comm'r, Soc. Sec. Admin.*, 657 F. App'x  835, 838 (11th Cir. 2016) (holding that,

although ALJ never discussed 12.05, finding that claimant lacked adaptive deficits was implied from ALJ's conclusion that claimant's prior work experience for fifteen years in semi-skilled jobs indicated that she did not have an intellectual disability); *Rodriguez v. Comm'r of Soc. Sec.*, 633 F. App'x 770, 774 (11th Cir. 2015) (finding that ALJ implicitly concluded that claimant did not have deficits in adaptive functioning where the substantial evidence showed that claimant attended mainstream high-school classes through the eleventh grade without any specialized educational assistance, assisted his wife with household chores such as cooking and laundry, did the grocery shopping for his household, attended church twice a week, had a driver's license, and had a work history for many years including jobs at the skilled and semi-skilled level). However, unlike the claimants in those cases, Kyles does not have a lengthy work history in semi-skilled work, has not shown the ability to perform semi-skilled work, and the evidence in the record is mixed concerning her level of functioning.

At the time Kyles filed her claim for benefits she was eighteen years old and had never worked. (Tr. 70-71). She obtained a high school diploma and passed a portion of the high school exit exam.[2] (Tr. 39). During school, Kyles was in special education classes and received extra help in just about all of her subjects, homework help, and testing accommodations. (Tr. 41-42). Contrary to the ALJ's finding, she testified that she did not attend community college.[3] (Tr. 42). In September of 2104, she was hired to

---

[2] The record is confusing regarding which portions of the exit exam Kyles passed. In the Decision, the ALJ states that she passed three portions – Science, English, and History, while Kyles's testimony is that she did not pass those three subjects. (Tr. 28, 39).

[3] The ALJ's mistaken finding that she "attended community college courses" after high school was one of the factors on which he relied in finding that factors supporting disability were outweighed by other factors. (Tr. 27). The evidence he cited did not mention community college.

work at Wal-Mart as a cashier. (Tr. 39-40). Her time as a cashier was brief, about two weeks, because she was having difficulty focusing on transactions with customers and making change. (Tr. 40). She then started doing "housework" at Wal-Mart, like "cleaning bathrooms and stuff." (*Id.*). On the days she works, she usually works about five to six hours, with a fifteen minute break every two hours. (*Id.*). She testified that it takes her longer to complete her job duties than other people and that she has to work extra time to complete her job duties. (Tr. 44). She has a difficult time focusing on more than one task at a time and becomes frustrated with changes in her tasks or in the workplace. (Tr. 57-58).   The ALJ found that this "work activity [does] not rise to the level of substantial gainful activity." (Tr. 24).

Kyles does not live alone; she lives with her mother and sister. (Tr. 40). She does simple household tasks, has a checking account, has a driver's license, drives to work, and goes to church about once a month, usually with her mother, but sometimes alone. (Tr. 40-41). She does minimal cooking. (Tr. 255). She has difficulty managing her time and knowing when she needs to get up to do her activities. (Tr. 60). Her mother has to remind her to brush her teeth and to take her medicine. (Tr. 255).

Kyles was  evaluated on August 14, 2013, at the beginning of her senior year in high school, by psychologist Nina E. Tocci. (Tr. 328). Her mother attended and assisted Kyles during the evaluation. (*Id*.). Kyles demonstrated fair attention and concentration, a poor fund of information and comprehension, little insight into her behavior, and rudimentary social judgment. (*Id*.). For example, she did not know the number of days in a year ("7"), the number of dimes in a dollar ("6"), the direction of the sunrise ("North"), the animal from which wool comes ("mammals" (RQ) "cheetahs"), the number of items

in a dozen ("10"), or how to count serial threes backwards or serial fours forwards. (*Id.*). A review of her IEP by Dr. Tocci revealed that Kyles was functioning well below average in Reading, Math, and Language skills and had scored below the 25th percentile in Math and Reading on her most recent attempt at the high school exit exam. (Tr. 330). Dr. Tocci opined that Kyles appeared "to be functioning within the mentally impaired range of intellectual disability." (*Id.*).

Kyles was also evaluated by psychologist Kenneth R. Starkey on December 9, 2013. (Tr. 336). Dr. Starkey administered the Weschler Adult Intelligence Scale, Fourth Edition (WAIS-IV), on which Kyles had a full scale IQ score of 70, which placed her in the 2nd percentile and, according to Dr. Starkey, at the lower end of the borderline range of intellectual functioning. (Tr. 338). Based on his evaluation, Dr. Starkey opined that Kyles "ability to understand, remember, and carry out simple/concrete instructions appears adequate (although she would likely have difficulty with more complex instructions or those requiring other than basic literacy and computational skills)." (Tr. 339). He also opined that "[h]er ability to work with teachers/supervisors and peers/coworkers also appears adequate … [but] [h]er ability to work with the general public and with pressures common to most every day work settings appears marginal (at the present time)." (Tr. 340).

Taking into account the foregoing record evidence, this case falls in line with those cases finding reversal and remand appropriate when the ALJ did not analyze the claim under 12.05 when presented with an IQ score that fell within the stated range. *See, e.g., Tubbs,* 2017 WL 1135234, at * 5-6 (reversing and remanding because it was "unclear from the record that the ALJ conducted the proper analysis under Listing

12.05C" where the claimant scored full scale scores of 64 and 66 on IQ tests, was in special education classes from seventh grade through graduation, and had worked as a cook/dishwasher and as a scaler in a chicken plant for time periods spanning several months to a few years); *Hartman v. Colvin*, No. CA 13-00005-C, 2014 WL 3058550, * 6-8 (S.D. Ala. July 7, 2014) (reversing and remanding where the ALJ failed to discuss Listing 12.05C, and it was far from clear that, if the ALJ had applied the correct standard, her findings regarding the claimant's adaptive functioning skills would support the determination that the claimant did not meet 12.05C where the evidence showed that claimant had a high school GPA of 3.18 and a class rank of 31 of 193, but was in special education classes and received a high school certificate of attendance in lieu of a diploma, that she had performed two jobs – clothes presser and hamburger assembler – but not at substantial gainful activity levels, that she lived with her mother and her children (of whom the mother had custody), and that she was able to cook, clean, shop, handle finances and drive, although it took seven attempts to get her license); *Hogue v. Colvin*, Civ. A. No. 2:13-00375-N, 2014 WL 1744759, * 16 (S.D. Ala. Apr. 30, 2014) (reversed and remanded for consideration of Listing 12.05C where the ALJ did not address whether the evidence was sufficient to rebut the presumption of disability where the evidence showed that claimant had friends and a girlfriend, had worked as a lifeguard, shopped and knew how to handle money, knew how to prepare meals and do household chores, took care of his son, played video games, used Facebook, "was a well spoken young man," had a driver's license, and dropped out of school during his second attempt at seventh grade); *Frank v. Astrue*, No. CA 2:11-00215-C, 2011 WL 6111692, * 4 (S.D. Ala. Dec. 8, 2011) (finding that it was "clearly

error to not consider Listing 12.05(C) and, given the evidence before the ALJ, [to not] find that a claimant is presumptively disabled," where the evidence showed that claimant was the primary caregiver for her children, that she had past work as an office cleaner and fast food worker, and that she was in special education classes and failed to graduate).

The record is certainly not clear that the presumption of deficits in adaptive functioning, to which Kyles is entitled, is rebutted by the evidence of record. This Court, mindful of the limits of its review, declines to make such a determination when such a determination is within the purview of the ALJ. Accordingly, for the reasons set forth herein, the Court finds that this case should be remanded so that the Commissioner can specifically consider whether Kyles's intellectual deficit meets or equals the 12.05C Listing.

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff Alexis Kyles's claim for benefits be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes Plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** this the **3**rd day of **July, 2017**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**